Frederic G. Ludwig, III (SBN 205332)
eric.ludwig@ludwigiplaw.com
LUDWIG, APC
12463 Rancho Bernardo, No. 532
San Diego, California 92128
Telephone: 619.929.0873

Attorneys for Plaintiff
AE TYPE, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AE TYPE, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> ALLCITY MEDIA, LTD., a United Kingdom limited company; VENDIAN ENTERTAINMENT, LLC, a Delaware limited liability company; BOLD FILMS, INC., a Delaware corporation; SPACE ROCKET NATION, a foreign entity of unknown type or jurisdiction; and NICOLAS WINDING REFN, an individual, <br><br> Defendants. | CASE NO. **'16CV3036 MMA MDD** <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT AND UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT

Case No.

Plaintiff AE TYPE, INC., alleges the following against Defendants ALLCITY MEDIA, LTD., VENDIAN ENTERTAINMENT, LLC, BOLD FILMS, INC., SPACE ROCKET NATION, and NICOLAS WINDING REFN:

## PRELIMINARY STATEMENT

1.   Plaintiff brings this action seeking to put an end to, and obtain redress for, Defendants' willful and admitted infringement of Plaintiff's copyright in certain software programs used in the creation of various computer-generated fonts and typefaces, which fonts and typefaces Defendants incorporated into the feature film entitled *The Neon Demon* without knowledge, consent, or authorization of Plaintiff and in violation of the Plaintiff's End User License Agreement.

## JURISDICTION AND VENUE

2.   This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, *et seq*.

3.   This Court has original subject matter jurisdiction over all copyright infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court also has supplement jurisdiction over those claims brought by Plaintiff, which arise under state law, pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

4.   This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of California and in this judicial district, the acts of infringement complained of herein occurred in the State of California and in this judicial district, and Defendants have caused injury to Plaintiff and its intellectual property within the State of California and in this judicial district.

5.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a).

# THE PARTIES

6. Plaintiff AE TYPE, INC. ("AE Type") is a California corporation with its principal place of business located at 1241 Windsor Road, Cardiff, California 92007.

7. On information and belief, Defendant ALLCITY MEDIA, LTD. ("AllCity") is a limited company organized and existing pursuant to the laws of the United Kingdom, with its principal place of business located at 6 Hatton Pl, London EC1N, United Kingdom.

8. On information and belief, Defendant VENDIAN ENTERTAINMENT, LLC ("Vendian") is a Delaware limited liability company with its principal place of business located at 630 5th Avenue, Suite 2000, New York, New York, 10111.

9. On information and belief, Defendant BOLD FILMS, INC. ("Bold Films") is a Delaware corporation with its principal place of business located at 6464 Sunset Boulevard, Suite 800, Los Angeles, California 90028.

10. On information and belief, Defendant SPACE ROCKET NATION ("Space Rocket Nation") is a foreign entity of unknown type or jurisdiction with its principal place of business located at Kvæsthusgade 5C, 3, Copenhagen 1251, Denmark.

11. On information and belief, Defendant NICOLAS WINDING REFN ("Refn") is an individual and resident of Los Angeles, California. Refn is the co-owner and co-founder of Space Rocket Nation.

12. On information and belief, at all times material to this Complaint, each of the Defendants in addition to acting for himself or itself and on his or its own behalf individually, is and was acting as the agent, servant, employee and representative of, and with the knowledge, consent and permission of, and in conspiracy with, each and all of the Defendants and within the course, scope and authority of that agency, service, employment, representation, and conspiracy. AE

Type further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all Defendants. Specifically, and without limitation, AE Type alleges on information and belief that the actions, failures to act, breaches, conspiracy, and misrepresentations alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and done with the cooperation and knowledge of each and all Defendants.

## GENERAL ALLEGATIONS

13. This case illuminates the significant, but often overlooked, role fonts and typefaces play in the world of artistic design and marketing. A "font" is a specific collection of text characters in a particular style and size. The overall type design for a set of fonts is the "typeface" and variations of this design comprise the "typeface family." Thus, Times New Roman is a typeface, while *Times New Roman italic* is a font. In practice, the terms "font" and "typeface" are often used interchangeably.

14. To the observer, the visual impression particular fonts and typefaces impart carry substantial meaning and character. Fonts are powerful; a font can completely change an intended message depending on how or where the author uses it. Some designers even argue fonts have unique "personalities."

15. Font and typeface production underwent a dramatic transformation in the last 30 years. Historically, fonts and typefaces consisted of metal dies, individually cast to depict single letters in the applicable style, which a professional printer arranged by hand on a printing press. Centuries later, with the advent of desktop publishing, "analog" letters made of metal and photos gave way to digital formats.

16. The first of these technological innovations produced fonts in the "bitmap" format – akin to superimposing a sheet of graph paper over a drawn letter and coloring in the boxes (pixels) that fell within the outline of that letter. Bitmap fonts enjoyed the advantage of being amenable to careful edits for quality and

readability. However, the bitmap format suffered from the disadvantage of requiring a separate font for each size and resolution, thereby taking up a relatively large amount of memory in a computer software file.

17. Designers and programmers developed a subsequent font technology still currently used, as a result, which allowed for "scalable" outline fonts that relied on smaller-sized, faster-processing software files. In that process, a designer would plot analog drawings of letters with a mouse or stylus to create an outline representation (made up of curves and straight lines). Such outlines were then digitized into a font software application installed in a computer operating system and used in the production of text.

18. In the market today, font and typeface design foundries who develop digital lettering typically make their creations available for others to download via numerous online, Internet-based platforms. Most foundries offer their proprietary fonts for a fee and subject to the terms and conditions of applicable end-user license agreements; premium foundries command premium licensing fees in exchange for granting a user certain limited rights to a specific font within a defined territory and market.

19. The global market for commercial font and typeface licensing is large. For example, publicly traded Monotype Imaging Holdings, Inc. (TYPE), which is in the business of providing "type-related products, technologies and expertise" reports an annual income of $192,419,000 for 2015. License fees for individual fonts used in connection with extensive, worldwide commercial purposes routinely exceed hundreds of thousands of dollars.

### AE TYPE'S "VANITAS" AND "SEVIGNE" FONTS

20. Based in San Diego, AE Type is an independent digital type foundry, which creates, develops, and publishes high-quality, proprietary retail and custom fonts, licensed worldwide for private and commercial use. Since 2008, AE Type's

clients have incorporated its fonts in some of the most exclusive, coveted international publications, design organizations, and global brands.

21.     Michael S. Jarboe, a graduate of Maryland Institute College of Art, owns and operates AE Type. Over the course of his 15+ years as a graphic and type designer, Mr. Jarboe has been privileged enough to work with countless influential artists, designers, and brands, such as A&E, Activision, Billabong, Burton Snowboards, Condé Nast, DC Shoes, Disney, Hurley, Nike, Nixon, Procter & Gamble, Transworld Media, Quiksilver, Vans, and more. As a result, Mr. Jarboe enjoys a reputation as one of the premiere type designers in the industry.

22.     Two of AE Type's more noteworthy fonts, each created by Mr. Jarboe, include the "Sevigne" and "Vanitas" families of typefaces. First produced and published in 2010 and 2011, respectively, "Sevigne" and "Vanitas" are the culmination of substantial time, effort, and expense on the part of Mr. Jarboe. Attached hereto as **Exhibit 1** and **Exhibit 2** and incorporated herein by reference are true and correct copies of specimen sheets for the "Sevigne" and "Vanitas" fonts.

23.     AE Type makes both programs available for third-parties to purchase online, subject to the terms and conditions of an applicable End-User License Agreement ("EULA") and has done so since the initial publication of the software. By entering into the standard entry-level, "Desktop" EULA applicable to the "Sevigne" and "Vanitas" font programs and paying the appropriate royalty, users receive certain limited license rights to install the software on no more than three devices, accessible by an individual user for his/her own personal design needs, only. For those requiring broader rights, such as the ability to develop text in the "Sevigne" and "Vanitas" typefaces and fonts for purposes of broadcast use, such as a logo design or inclusion in a work of cinema, AE Type offers separate EULAs, customized as necessary on a case-by-case basis. Attached hereto as **Exhibit 3** and

incorporated herein by reference is a true and correct copy of the Desktop EULA governing "Sevigne" and "Vanitas," at all times relevant herein.

24. Due to the extensive artistic, creative expression embodied in the "Sevigne" and "Vanitas" fonts and corresponding computer software code, they constitute significant original works of authorship (collectively, the "AE Type Works"). AE Type owns all right, title, and interest in and to the AE Type Works because all such works: (i) qualify as "works made for hire," pursuant to 17 U.S.C. § 101; or (ii) were assigned to AE Type pursuant to one or more written agreements.

25. AE Type claims both "Sevigne" and "Vanitas" in two pending applications for Certificates of Registration from the United States Copyright Office, including: (i) "Sevigne," Service Request No. 1-3854148331, dated July 27, 2016; and (ii) "Vanitas," Service Request No. 1-3854148388, dated July 27, 2016. Attached hereto as **Exhibit 4** and **Exhibit 5** and incorporated herein by reference are true and correct copies of the applications for Certificates of Registration for "Sevigne" and "Vanitas."

## "VANITAS" AND "SEVIGNE" USE IN *THE NEON DEMON*

26. In the summer of 2016, AE Type discovered what appeared to be its "Sevigne" and "Vanitas" fonts used in connection with a feature film entitled *The Neon Demon*,[1] produced by Bold Films, Vendian Entertainment, and Space Rocket Nation. Specifically, AE Type noticed the title sequence for *The Neon Demon*, as well as collateral marketing, promotional, and packaging materials related to the Film, seemingly incorporated "Sevigne" and "Vanitas" fonts and typefaces into such works, without the prior authorization or consent of AE Type. Indeed, although *The Neon Demon* relied heavily upon typefaces and fonts derived from the

---

[1] *The Neon Demon*. Dir. Nicholas Winding Refn. Broad Green Pictures, 2016. Film (hereinafter, "the Film" or "*The Neon Demon*").

"Sevigne" and "Vanitas" programs, AE Type had no record of ever entering into a custom EULA with any individual or entity associated with the Film.[2]

27. As AE Type continued its investigation into the use of "Sevigne" and "Vanitas" in the Film, it came across an August 3, 2016 interview published by online title sequence magazine *Art of the Title*, wherein David Frost, co-founder of AllCity Media and Executive Producer of *The Neon Demon*, discussed his agency's contribution to the development of the Film. Attached hereto as **Exhibit 7** and incorporated herein by reference is a true and correct printed copy of the interview originally available online at www.artofthetitle.com/title/the-neon-demon/.

28. In the interview, Mr. Frost gave a detailed account of the creative process leading to the design of the title sequence and marketing collateral for the Film. The director of *The Neon Demon*, Nicholas Winding Refn, worked side-by-side with Mr. Frost and played an integral part in the development of such materials, the text for which was constructed with "Sevigne" and "Vanitas" fonts. Starting with an initial phone call between Refn and Mr. Frost, the Film's director specifically instructed AllCity Media to prepare art for the Film, saying "I want you guys to do the title sequence." From there, Refn guided AllCity Media's efforts for more than one year, as the parties experimented with various iterations of posters and title cards for *The Neon Demon*.

29. During that time, Refn and AllCity Media met repeatedly to work on the title sequence and other items, which included "Vanitas." As Mr. Frost put it:

> [W]e spent a lot of time with Nic going through what the pacing would be like, how long do these names need to be on screen, and how the colours transition between them.

---

[2] Attached hereto as **Exhibit 6** and incorporated herein by reference are three separate instances of the use of "Sevigne" and "Vanitas" related to the Film, including: (i) a promotional poster for *The Neon Demon*; (ii) a theatrical poster for *The Neon Demon*; and (iii) title treatments for *The Neon Demon*. Corresponding to such examples are pertinent screenshot captures depicting creation of the text with AE Type's programs.

…

The brief from [Refn] was that it's got to be "really fluffy". You can take that in many different ways, but he wanted it to be really fluffy, almost cosmetic-like.

…

**Could you tell us about the original concepts for the title sequences and how they were developed?**

**Ben:** Initially the main title was just going to be a single card, just a look with credits superimposed over the edit. My original idea was exploding makeup. But as Nic and editor Matthew Newman played with the edit, it became apparent that a full sequence would build the tone in a much more cerebral way.

…

**Once the concepts were approved, what were the first steps in the production process?**

**David:** Once we'd pitched this idea of glitter falling, which Nic was well into, the discussion became "OK, well how do we do that?" Ben is brilliant and worked out a way of producing the glitter so it looked real.

…

[I]t was really important for Nic to have the main title, to start the movie in the right way with the colour and the falling glitter. It all had to work together.

…

Nicolas was totally cool and patient. "What do we think?" When we put it together we really hoped it would fly, because it was a big departure from the flat colour. Thankfully the response from Nic was "Love it! Let's go."

Nicolas is really collaborative…. (See Exhibit 7).

30. Seeing Mr. Frost's comments about the title sequence and art for the Film prompted AE Type to take action. It contacted the U.S.-based Vendian Entertainment and Bold Films on October 10, 2016, for purposes of bringing to their attention the illicit use of "Sevigne" and "Vanitas" in *The Neon Demon.*

31. AE Type was optimistic that the unauthorized use of its intellectual property in the Film was merely a function of ignorance on the part of Defendants, rather than intentional or willful infringement. Consequently, AE Type first

8
COMPLAINT

Case No.

proposed a deeply discounted, comprehensive, retroactive license for the fonts that would cover the relevant usage of the software. The one-time fee for such licenses was $62,000. Attached hereto as **Exhibit 8** and **Exhibit 9** and incorporated herein by reference are true and correct copies of the October 10 correspondence to Vendian Entertainment and Bold Films.

32. Unfortunately, AE Type's attempts to open good-faith negotiations fell on deaf ears, as Vendian Entertainment and Bold Films ignored the October 10 communications. AE Type wrote Vendian Entertainment and Bold Films, again, this time on October 26, 2016 in hopes of resolving the licensing issue. Attached hereto as **Exhibit 10** and **Exhibit 11** and incorporated herein by reference are true and correct copies of the October 26 letters to Vendian Entertainment and Bold Films.

33. Finally, in late October 2016, Mr. Jarboe received an email message from Mr. Frost, requesting a conference call concerning the fonts used in *The Neon Demon*. The parties subsequently met telephonically on October 31, 2016. During the call, Mr. Frost and AllCity Media co-founder Pete Hanson complimented Mr. Jarboe on the "gorgeous" font he created in "Vanitas," while also readily admitting to using "Vanitas" without permission, throughout the Film and its associated marketing material.

34. According to Mr. Frost, AllCity Media was supposedly "mortified" to learn of the infringement. Mr. Frost purported that AllCity Media did not know how or when it came into possession of the "Vanitas" code, nor did AllCity Media appreciate all parties involved in the use of the code needed to enter into custom license agreements directly with AE Type, before exploiting the software in the manner at hand. In fact, Mr. Frost indicated the "Vanitas" software file "had found its way onto one of AllCity Media's computers and had become part of the furniture."

35. As the call concluded, the parties expressed an interest in working together to quickly and informally settle the matter. AE Type took AllCity Media at its word, believing the London-based firm would negotiate in good-faith. Such was not the case.

36. Several days later, on November 4, Mr. Frost wrote directly to Mr. Jarboe, once more, offering AE Type only $2,500 as payment in full for any and all uses of "Vanitas" in connection with the Film. This was unacceptable.

37. AE Type repeated its demand for $62,000 in licensing fees in a November 8, 2016 email from AE Type's counsel to Mr. Frost, which email contained a thorough explanation as to the particulars of the custom font market and why "Sevigne" and "Vanitas" were so valuable. Moreover, AE Type reiterated to AllCity Media that, as producers of the Film and the ultimate end users of the software, Vendian Entertainment, Bold Films, and Space Rocket Nation needed their own licenses from AE Type, not just AllCity Media.

38. In response, Mr. Frost asked AE Type for even more detail on the cost structure of the foundry's licenses in order to corroborate the $62,000 fee. Continuing to operate under the notion that all parties desired to reach a fair, just, and mutually advantageous resolution, AE Type dutifully compiled and supplied AllCity Media with the pertinent information in a November 14, 2016 email to Mr. Frost. Moreover, AE Type even went so far as to include in the November 14 email a prospective price quote from a competing foundry known as Typotheque, which illustrated the estimated cost of licensing a comparable font from that design firm, for uses commensurate with those of "Vanitas" in the Film came to roughly $115,000.

39. Despite the supporting documentation, AllCity Media rejected AE Type's demand once more; it replied to AE Type's November 14 message on December 1, 2016, with another unreasonably low offer of $3,500 to license "Vanitas." Attached hereto as **Exhibit 12** and incorporated herein by reference is a

true and correct copy of the December 1 email message from AllCity Media representative Miguel Gonzalez to AE Type's counsel.

40.   In the message, Mr. Gonzalez complained that AllCity Media could not afford the $62,000 fee, as the company was small and *The Neon Demon* was not profitable.  Furthermore, Mr. Gonzalez insisted the AE Type demand was too high, bolstering his specious rationale by referencing various low-cost, low-quality, third-party font software, which he contended could serve as a substitute for "Vanitas" at a fraction of the price.  Finally, Mr. Gonzalez also included what appeared to be AllCity Media's own version of a price quote for a font license ostensibly obtained from Typotheque.  The one-page estimate supplied by AllCity Media, dated November 17, 2016, specified a fee of only €975.00 for the necessary rights to the software from Typotheque.  AE Type was disappointed, to say the least.

41.   Not only was this December 1 proposal unacceptable, Mr. Jarboe soon found it was based on purposefully forged materials.  Through a cursory forensic analysis of the price quote allegedly generated from Typotheque, Mr. Jarboe determined the digital document, in .pdf format, contained numerous artifacts of intentional manipulation, which concealed much of the original text in the document.  Upon restoration of the price quote to its original state, Mr. Jarboe learned the actual estimate was, in fact, €97,523.68 and not merely €975.00.  Attached hereto as **Exhibit 13** and incorporated herein by reference is a true and correct copy of the price quote provided by AllCity Media, as well as the screen-captures of Mr. Jarboe's analysis of the document.

42.   At that point, AE Type realized Defendants, including AllCity Media had no intention of negotiating in good faith.  Instead, they employed delay, obfuscation, and dissembling missives in an effort to cajole AE Type into abandoning its efforts to obtain fair value for the AE Type Works.

43.   Defendants continuously and aggressively failed to avail themselves of the chance to informally resolve the dispute with AE Type by neglecting to enter

into the appropriate licenses for "Sevigne" and "Vanitas." In light of such bad-faith conduct and blatant disregard for AE Type's valuable intellectual property rights, AE Type had no choice but to seek redress in this Court for infringing the AE Type Works.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. §§ 106 and 501)

44. AE Type realleges and incorporates Paragraphs 1 through 43 of this Complaint, as if fully set forth herein.

45. Through its conduct alleged herein, Defendants have infringed AE Type's copyrights in its works, including, without limitation, by reproducing, distributing, displaying, creating derivative works, and/or publishing the copyrighted AE Type Works claimed in the application for Certificate of Registration from the United States Copyright Office entitled "Sevigne," Service Request No. 1-3854148331, dated July 27, 2016, without authorization of AE Type, in violation of Sections 106 *et seq.* and Section 501 of the Copyright Act. 17 U.S.C. §§ 106 *et seq.*, and 501.

46. Each infringement by Defendants of AE Type's copyrighted AE Type Works constitutes a separate and distinct act of infringement.

47. Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of AE Type.

48. Defendant Refn personally, directly, and actively ordered and controlled and engaged, participated, and assisted in the direct, indirect, and/or induced infringement of the AE Type Works through his development of the title sequence and collateral marketing material related to the Film, as alleged herein.

49. As a direct and proximate result of the infringements by Defendants, AE Type is entitled to damages and Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.

50. Alternatively, AE Type is entitled to the maximum statutory damages in the amount of $150,000 with respect to each infringed work, or for such other amounts as may be proper under 17 U.S.C. § 504.

51. AE Type is further entitled to recover its reasonable attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

52. As a direct and proximate result of the foregoing acts and conduct, AE Type has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe AE Type's rights in its copyrighted AE Type Works. AE Type is entitled to preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. §§ 106 and 501)

53. AE Type realleges and incorporates Paragraphs 1 through 52 of this Complaint, as if fully set forth herein.

54. Through its conduct alleged herein, Defendants have infringed AE Type's copyrights in its works, including, without limitation, by reproducing, distributing, displaying, creating derivative works, and/or publishing the copyrighted AE Type Works claimed in the application for Certificate of Registration from the United States Copyright Office entitled "Vanitas," Service Request No. 1-3854148388, dated July 27, 2016., without authorization of AE Type, in violation of Sections 106 *et seq*. and Section 501 of the Copyright Act. 17 U.S.C. §§ 106 *et seq*., and 501.

55. Each infringement by Defendants of AE Type's copyrighted AE Type Works constitutes a separate and distinct act of infringement.

56. Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of AE Type.

57. Defendant Refn personally, directly, and actively ordered and controlled and engaged, participated, and assisted in the direct, indirect, and/or induced infringement of the AE Type Works through his development of the title sequence and collateral marketing material related to the Film, as alleged herein.

58. As a direct and proximate result of the infringements by Defendants, AE Type is entitled to damages and Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.

59. Alternatively, AE Type is entitled to the maximum statutory damages in the amount of $150,000 with respect to each infringed work, or for such other amounts as may be proper under 17 U.S.C. § 504.

60. AE Type is further entitled to recover its reasonable attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

61. As a direct and proximate result of the foregoing acts and conduct, AE Type has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to infringe AE Type's rights in its copyrighted AE Type Works.  AE Type is entitled to preliminary and permanent injunctive relief.

## THIRD CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (In Violation of California Law)

62. AE Type realleges and incorporates Paragraphs 1 through 61 of this Complaint, as if fully set forth herein.

63. At some time prior to 2016, AllCity Media and/or one or more other Defendants, or persons acting on their behalf, downloaded the computer software code for the AE Type Works, to include the "Sevigne" and "Vanitas" fonts. As a result, AE Type and AllCity Media and/or AE Type and one or more other Defendants entered into one or more EULAs governing the AE Type Works.

64. Each EULA entered into by and between AE Type and AllCity Media and/or AE Type and one or more other Defendants is a valid, enforceable written contract.

65. AE Type has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the applicable EULA contract.

66. Beginning at least as early as January 1, 2016, AllCity Media and/or one or more other Defendants breached the applicable EULA by exceeding the scope of the licensed rights delineated therein. Such actions included, but are not limited to: installing and using the AE Type Works on more than the designated number of desktop computers; using the AE Type Works in connection with the Film and its collateral marketing material; using the AE Type Works for commercial purposes not authorized by the EULA; creating commercial logos based upon or incorporating the AE Type Works; creating works for broadcast purposes that included the AE Type Works or derivative works thereof; and failing to obtain supplemental and/or extended licensed rights in and to the AE Type Works as necessary for use in connection with the Film.

67. As a result of Defendants' breach of the contract, AE Type has suffered damages in an amount to be proven at trial, but in no event less than $200,000.

**FOURTH CLAIM FOR RELIEF**

**UNFAIR COMPETITION**

**(Cal. Bus. & Prof. Code § 17200)**

68. AE Type realleges and incorporates Paragraphs 1 through 67 of this Complaint, as if fully set forth herein.

69. Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent"

business practice.

70. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

71. Defendants violated § 17200's prohibition against engaging in an unlawful act or practice by, *inter alia*, reproducing, distributing, displaying, creating derivative works, and/or publishing protected, copyright material owned by AE Type, without authorization and in violation of federal law.

72. Section 17200 also prohibits any "unfair . . . business act or practice." As described in the preceding paragraphs, Defendants engaged in the unfair business practice of reproducing, publishing, and displaying AE Type's copyrighted AE Type Works material, as if such material originated from, or belonged to, Defendants. Such conduct was illegal and deceptive, in as much as Defendants' customers and those viewing *The Neon Demon* and its collateral marketing materials would wrongly conclude the fonts used in connection with the Film were provided by AE Type and with its consent.

73. Defendants' business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of this State. Further, any justifications for Defendants' wrongful conduct are outweighed by the adverse effects of such conduct. Thus, Defendants engaged in unfair business practices prohibited by California Business & Professions Code §17200 *et seq*.

74. Section 17200 also prohibits any "fraudulent business act or practice." Defendants violated this prong of the UCL by disseminating and/or agreeing to disseminate, reproducing, displaying, creating derivative works from, and publishing protected, copyright material owned by AE Type, without authorization and which have a tendency to mislead the public. Defendants' misleading publication of AE Type's copyrighted materials, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of California Business and Professions Code §17200.

75. Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendants engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code §17200.

76. Defendants' conduct caused and continues to cause substantial injury to AE Type and AE Type has suffered injury in fact and lost money as a result of Defendants' unfair conduct.

77. Additionally, pursuant to California Business & Professions Code §17203, AE Type seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to return the full amount of money improperly collected to all those who have paid them as a result of the aforementioned conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AE Type prays for judgment against each of the Defendants as follows:

1. For AE Type's damages and Defendants' profits in such amount as may be found; alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed either directly or indirectly, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c);

2. For preliminary and permanent injunctions enjoining Defendants, and all persons acting in concert or participating with Defendants, from: (a) directly or indirectly reproducing, distributing, displaying, producing, manufacturing, creating derivative works, publishing, or otherwise infringing in any manner on AE Type's copyrighted works, whether now in existence or hereinafter created; and (b) causing, contributing to, inducing, enabling, facilitating, or participating in the infringement of any of AE Type's copyrighted works;

3. For preliminary and permanent injunctions, directing Defendants to

deliver for destruction at Defendants' expense, inter alia, all copies of *The Neon Demon* and all Film-related advertising and marketing materials, together with any and all computer files, hard drives, computer programs, solid state drives, disks, CD-ROM's and DVD's bearing unauthorized and infringing copies of the AE Type Works, together with any and all other recorded media and all other merchandise in Defendants' possession or under their control that were created or that bear the result of the unauthorized use of the AE Type Works;

    4. For contract and compensatory damages in an amount to be proven at trial;

    5. For restitution of Defendants' unlawful proceeds;

    6. For an accounting and the imposition of a constructive trust;

    7. For punitive and exemplary damages, as authorized by AE Type's state law claims, in such amount as may be awarded at trial;

    8. For prejudgment interest according to law;

    9. For AE Type's reasonable attorneys' fees and full costs incurred in this action; and

    10. For such other and further relief as the Court may deem just and proper.

DATED: December 14, 2016   Respectfully Submitted

By: */s/ Frederic G. Ludwig, III*
Frederic G. Ludwig, III
eric.ludwig@ludwigiplaw.com

LUDWIG, APC

Attorneys for Plaintiff
AE TYPE, INC.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff AE Type hereby demands a trial by jury on all issues raised by this Complaint and rightfully tried by jury.

DATED: December 14, 2016     Respectfully Submitted

By: */s/ Frederic G. Ludwig, III*
Frederic G. Ludwig, III
eric.ludwig@ludwigiplaw.com

LUDWIG, APC

Attorneys for Plaintiff
AE TYPE, INC.